IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,           )
                                    )
            vs.                     )
                                    ) Crim. No. 09-278
GREGORY J. PODLUCKY,                ) (see Civ. No. 18-102)
                                    )
            Defendant/Petitioner.   )

**MEMORANDUM OPINION**

I.      **Background**

The parties are well aware of the relevant underlying facts.  The above-captioned case, along with two others, involved fraud, tax evasion, and related money laundering associated with a beverage company known as LeNature's, Inc., of which Defendant Gregory J. Podlucky was the one-time majority shareholder and chief executive officer.  Following a lengthy investigation, Defendant was charged at Criminal No. 09-279, along with other officers, employees, and clients of LeNature's, with various fraud-based offenses, and at Criminal No. 09-278 with tax evasion. He was later charged, along with his wife and son, at Criminal No. 11-37 with various acts of money laundering.  On June 20, 2011, Defendant pled guilty to Count Three of the indictment at Criminal No. 09-278, charging him with income tax evasion, in violation of 26 U.S.C. § 7201; Count Twenty-four of the superseding indictment at Criminal No. 09-279, charging him with mail fraud, in violation of 18 U.S.C. § 1341; and Count One of the indictment at Criminal No. 11-37, charging him with conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h).  In connection with his plea, he and the Government entered into a plea agreement which provided that Defendant would be subject to a term of imprisonment of not more than 20

years, a term of supervised release of 5 years, no fine, a special assessment of $300, and restitution as determined by the Court. The agreement expressly clarified that Defendant "understands that the Government will seek a sentence of 20 years imprisonment," but that he reserves the right to seek a lesser sentence. It also contained a provision that Defendant "further waives the right to file a motion to vacate sentence, under 28 U.S.C. § 2255, attacking his conviction or sentence, and the right to file any other collateral proceeding attacking his conviction or sentence."

On October 20, 2011, the Court sentenced Defendant to 60 months' imprisonment at Criminal No. 09-278, 240 months' imprisonment at Criminal No. 09-279, and 240 months' imprisonment at Criminal No. 11-37, all to be served concurrently, and to be followed by 3 years' supervised release at Criminal No. 09-278, 5 years' supervised release at Criminal No. 09-279, and 3 years' supervised release at Criminal No. 11-37, all to be served concurrently. The Court further ordered restitution at Criminal No. 09-279 in the amount of $661,324,329.81. Judgment was entered on October 24, 2011. Although Defendant filed a notice of appeal on November 3, 2011 at all three cases, the Third Circuit Court of Appeals summarily dismissed the appeals based on Defendant's waiver of his appellate rights, filing the mandate in these matters on July 23, 2012. Defendant subsequently filed a motion pursuant to 28 U.S.C. § 2255 at all three of his criminal cases, which the Court dismissed on December 29, 2014, pursuant to the waiver of his right to file a collateral attack on his conviction or sentence. Defendant attempted to appeal the Court's decision, but the Third Circuit denied his request for a certificate of appealability on August 14, 2015.

After the Court, as well as the Third Circuit, had enforced the collateral waiver, Defendant continued to file motions seeking various forms of collateral relief. On January 13,

2017, the Court denied Defendant's motion to withdraw his guilty plea that he had filed on December 21, 2016.  In so doing, the Court explained that pursuant to Federal Rule of Criminal Procedure 11(e), a criminal defendant may not withdraw a plea of guilty after the court has imposed sentence.  Rather, the plea may be set aside only on direct appeal or collateral attack. The Court further discussed that it had already dismissed a previous collateral attack on the basis of the waiver in the plea agreement and that, since Defendant had already brought a motion under Section 2255, he would need certification from the Third Circuit to file another, which he had not received.  About a month later, on February 14, 2017, Defendant filed a motion seeking to reduce his sentence to account for his acceptance of responsibility, which the Court denied on March 2, 2017.  Defendant made several unsuccessful attempts to appeal the Court's orders.

During the pendency of these appeals, Defendant began to file dozens of requests for collateral relief in each of his criminal cases, citing various grounds and procedural means.  All told, he filed at least 24 separate documents that were docketed as motions in one or more (generally all) of the three cases, as well as 20 separate documents in support of these various motions.[1]  Despite the sheer volume of material filed by Defendant, his filings essentially fall into one of three categories:  (1) Motions and supporting material seeking to withdraw Defendant's plea agreement; (2) Motions and supporting material asserting that the Court lacks subject matter jurisdiction over this case; and (3) Motions and supporting material alleging Government misconduct.  For the reasons discussed herein, there is no basis for the Court to

---

[1]     Defendant has since withdrawn all of his motions, and most of the other documents, filed at Criminal Nos. 09-279 and 11-37.  None of the remaining documents in those cases constitute or pertain to any pending motions.  Therefore, Criminal No. 09-278 is the only one of Defendant's cases with pending motions remaining.

grant any of the relief sought, and therefore, it will dismiss or deny each of Defendant's various requests.[2]

II.   **Discussion**

A.   **Motions Seeking to Withdraw Defendant's Plea Agreement**

Defendant argues that he should be permitted to withdraw his plea based on various theories of fraud, Government misconduct, ineffective assistance of counsel, and legal errors.  As the Court discussed above, this is not his first attempt to undo his plea agreement by way of a collateral attack.  Defendant's primary contention in his Section 2255 proceedings involved the validity of his plea agreement.  In adjudicating the 2255 motion, the Court did find Sections A.6 and B.5 of the plea agreement – pertaining to the forfeiture of pieces of jewelry seized by the Government during the investigation of these matters – to be unenforceable.  However, it further found that these provisions were severable from the plea agreement as a whole, and, accordingly, the Court upheld the plea agreement (absent Sections A.6 and B.5).  It likewise rejected Defendant's other arguments as to why the Court should not enforce the collateral waiver and dismissed his motion.  (Doc. Nos. 78, 79).  Several years later, the Court again rejected Defendant's efforts to withdraw his plea agreement, explaining that neither Federal Rule of Criminal Procedure 11(e) nor Section 2255 permitted him to do so under the circumstances. (Doc. No. 89).

---

[2]      Some of the documents that have been docketed as motions in this case are probably not really motions under a proper definition of the term.  Likewise, some of the documents not docketed as motions may well constitute motions.  Further, numerous motions were incorrectly filed in Miscellaneous cases before being re-filed in Defendant's criminal cases.  The Court has considered all of the points raised by Defendant in all of his dozens of filings in rendering this Memorandum Opinion and the accompanying Order.  The Court also notes that the same general arguments are repeated throughout these documents.

Defendant here cites a couple new procedural vehicles by which he claims he can raise his arguments related to his plea agreement.  In his most comprehensive document seeking the withdrawal the plea agreement – his Motion to Withdraw Plea Agreement Dated June 15, 2011 under Rule 60(b) (Doc. No. 103), which he amended twice (Doc. Nos. 105, 112) – he cites to Federal Rule of Civil Procedure 60(b) as authority.  In several other motions (Doc. Nos. 102, 113), he asserts that this Court has authority to void his plea agreement based on the Supreme Court's decision in Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944).  To be fair, Defendant acknowledges that, as a *pro se* litigant, he is simply attempting to find the proper means of raising his issues.[3]  Unfortunately for him, none of the procedural vehicles he seeks to utilize takes him to the destination he seeks.

The biggest problem Defendant faces is that all of his motions seeking to invalidate or withdraw his plea agreement constitute collateral attacks on his conviction and/or sentence.  As has been discussed many times in this case, Defendant's plea agreement contains a provision that Defendant "further waives the right to file a motion to vacate sentence, under 28 U.S.C. § 2255, attacking his conviction or sentence, and the right to file any other collateral proceeding attacking his conviction or sentence."  The Court has already upheld this waiver, pursuant to United States v. Khattak, 273 F.3d 557 (3d Cir. 2001), and United States v. Mabry, 536 F.3d 231 (3d Cir. 2008), and the Third Circuit has affirmed this Court's finding.[4]  The waiver applies not

---

[3]    *Pro se* pleadings are held to less stringent standards than formal pleadings drafted by lawyers.  See Haines v. Kerner, 404 U.S. 519, 520 (1972); Holley v. Department of Veterans Affairs, 165 F.3d 244, 247 (3d Cir. 1999).  However, even a *pro se* plaintiff must be able to prove a "'set of facts in support of his claim which would entitle him to relief.'"  Haines, 404 U.S. at 520-21 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

[4]    The Third Circuit has also enforced the waiver of Defendant's appellate rights contained in the plea agreement.  (Doc. No. 60).

only to Section 2255 motions, but to "any other collateral proceeding[s]."  Accordingly, however the present motions are characterized, as collateral attacks, they are covered by the waiver set forth in the plea agreement.

Nonetheless, even in the absence of the waiver, neither Rule 60(b) not the Supreme Court's decision in <u>Hazel-Atlas</u> would avail Defendant here.  As to Rule 60(b),[5] the Federal Rules of Civil Procedure govern "procedure in all civil actions and proceedings."  Fed. R. Civ. P. 1.  They do not apply in criminal cases.  Petitioner had no civil actions pending before this Court at the time he filed his motions, and in any event, the motions do not pertain to any adjudication of the civil action opened in connection with his prior motion to vacate.  Accordingly, Civil Rule 60 provides no basis for jurisdiction in and of itself for this Court to vacate Petitioner's criminal conviction or sentence in this case.  <u>See</u> <u>United States v. Mortimer</u>, 256 Fed. Appx. 468 (3d Cir.

---

[5]     Federal Rule of Civil Procedure 60(b) provides:

> (b) **Grounds for Relief from a Final Judgment, Order, or Proceeding.**  On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
>> (1) mistake, inadvertence, surprise, or excusable neglect;
>>
>> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>>
>> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>>
>> (4) the judgment is void;
>>
>> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>>
>> (6) any other reason that justifies relief.

2007); <u>Gray v. United States</u>, 385 Fed. Appx. 160, 162 (3d Cir. 2010); <u>United States v. Moon</u>, 527 Fed. Appx. 473, 474-75 (6th Cir. 2013); <u>United States v. Pope</u>, 124 Fed. Appx. 680, 682 (2d Cir. 2005); <u>United States v. Wallace</u>, 82 Fed. Appx. 701, 701 (1st Cir. 2003).

A Rule 60(b) motion may be adjudicated on its merits when the factual predicate of the motion attacks the manner in which an earlier Section 2255 judgment was procured rather than the underlying sentence or conviction. See <u>Gonzalez v. Crosby</u>, 545 U.S. 524, 532-33 (2005); <u>United States v. Enigwe</u>, 142 Fed. Appx. 642, 642-43 (3d Cir. 2005) (citing <u>Pridgen v. Shannon</u>, 380 F.3d 721, 727 (3d Cir. 2004)).  However, Defendant's motions in no way challenge the manner in which his previous Section 2255 motion was adjudicated other than to disagree with the Court's conclusion.  The closest he comes to attacking the manner in which the Court rendered its decision in the earlier Section 2255 proceedings is to assert that Government counsel, in responding to his Section 2255 motion, was dishonest about the nature and existence of the alleged agreement to return certain personal pieces of jewelry to him.  However, the Court was well aware that Defendant disagreed with the Government's assertions and considered that disagreement in ruling on the motion.  Moreover, as will be explained more fully below, Defendant does not provide any basis for establishing that the Government's position as to the status of the agreement to return jewelry was false or fraudulent.

In reality, Defendant is clearly, and for the most part expressly, challenging various aspects of the underlying case, including a number of evidentiary issues, alleged misconduct by the Government in investigating this matter, ineffective assistance of his trial counsel, the alleged miscalculation of his United States guideline sentencing factors and restitution, and his claim of

7

a secret cooperation agreement not mentioned in the plea agreement.[6]  As such, his attempt to raise claims under Rule 60(b) cannot be construed as an attack on a prior habeas proceeding, but as a collateral attack on his conviction and/or sentence.  Accordingly, his motions would properly be treated as ones under Section 2255, subject to the requirements of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  See Gonzalez, 545 U.S. at 532-33; Gray, 385 Fed. Appx. at 162-63.  As discussed, even in the absence of a waiver, Defendant has not received the requisite certification by the Appellate Court to file a successive motion.[7]  Accordingly, the Court has no jurisdiction and must dismiss the motions in any event.  See Robinson v. Johnson, 313 F.3d 128, 139-140 (3d Cir. 2002).  Moreover, most of the issues he brings before the Court here have been previously addressed by this Court, the Third Circuit, or the United States Magistrate Courts.[8]

As to Defendant's claims of fraud pursuant to Hazel-Atlas, courts have held that the decision in that case does not apply to criminal judgments, nor does it permit criminal defendants to avoid the gate-keeping requirements of the AEDPA.  See United States v. Washington, 549 F.3d 905, 912-14 (3d Cir. 2008); United States v. Bush, 457 Fed. Appx. 94, 95-96 (3d Cir. 2012); United States v. Morris, 2017 WL 4857460 (3d Cir. July 27, 2017); Reynolds v. United States, Civ. No. 3:18-cv-1093, 2018 WL 2981343, at *2 (M.D. Pa. June 14, 2018).  Therefore,

---

[6]     As the Court has discussed many times in this case, the alleged cooperation agreement was not merely omitted from the plea agreement, its existence is directly contradicted by the plain language of the agreement, as well as statements made at Defendant's plea hearing.  (See Doc. No. 78).

[7]     To the extent that the Court can construe any meaning in Defendant's Motion to Vacate Void Judgment for Lack of Subject-Matter Jurisdiction (Doc. No. 143), he seems to raise essentially the same issues and arguments.

[8]     The Court therefore sees no value in transferring this matter to the Third Circuit, as that court has already addressed most of the issues raised by Defendant.

purporting to raise a claim pursuant to <u>Hazel-Atlas</u> does not eliminate Defendant's need to first seek Circuit Court certification to raise his claims.  See <u>Ferguson v. United States</u>, Crim. No. 03-72, 2016 WL 157877, at **3-4 (W.D. Pa. Apr. 20, 2006).  Moreover, even assuming that he had received the proper authorization to raise these claims, and assuming that there was no collateral waiver, Defendant has not set forth a *prima facie* case under the criteria established by the Supreme Court in <u>Hazel-Atlas</u>.  In raising a claim based on "after-discovered fraud" pursuant to this <u>Hazel-Atlas</u>, Defendant must establish, by clear, unequivocal, and convincing evidence, the existence of "(1) an intentional fraud; (2) by an officer of the court; (3) which is directed at the court itself; and (4) in fact deceives the court."  <u>Herring v. United States</u>, 424 F.3d 384, 386-87 (3d Cir. 2005).  A finding of such level of fraud "may be justified only by 'the most egregious misconduct directed to the court itself.'"  <u>Id.</u> (quoting <u>In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions</u>, 538 F.2d 180, 195 (8th Cir. 1976)).  None of the acts Plaintiff alleges were committed by Government attorneys are sufficient to meet this standard.

In his Motion to Withdraw His Guilty Plea Due to Fraud on the Court filed on June 9, 2017 (Doc. No. 102), Defendant claims that the "fraud" at issue related to threats made by a Government attorney to indict his father-in-law, Walter Boyd, if Defendant did not agree to plead guilty.  However, by Defendant's own account, any such communication was directed at him, and not at the Court itself.[9]  Moreover, Defendant provides no basis for establishing that the Government attorney was acting fraudulently when he raised the prospect of indicting

---

[9]    To the extent that Defendant claims that the Government's or his own counsel's silence at the plea hearing constituted fraud directed at the Court, such argument has no merit.  Defendant himself denied that he was threatened at the hearing upon the Court's direct questioning.  The Court asked Defendant personally, and not his counsel or the Government, whether anyone had made a threat to induce his plea.  He has presented no evidence that any other party knowingly failed to disclose relevant evidence to the Court they believed to be fraudulent.

Defendant's father-in-law.  Government counsel even provided a basis – perjury based on his grand jury testimony – for charging Mr. Boyd.  Defendant does nothing more than express his own position that there would be no basis to do so, not that the Government believed this to be the case and yet still threatened to indict Mr. Boyd.

In his Motion to Withdraw His Guilty Plea Due to Fraud on the Court filed on July 25, 2017 (Doc. No. 113), Defendant asserts that the fraud was the Government's representation that no agreement had been reached in regard to the personal pieces of jewelry to be returned to him pursuant to Sections A.6 and B.5 of the plea agreement.  However, he merely claims that he had communicated to the Government which pieces that he wanted to be returned, not that there was any actual agreement between him or his counsel and the Government.  Indeed, none of the evidence he proffers establishes any meeting of the minds between Defendant and the Government as to the pieces to be returned.  The Government made no assertions suggesting that Defendant has not communicated with them about the pieces to be returned at all, merely that the parties had not reached an agreement.  As such, he has not alleged any actual fraud.  Moreover, the Court was not deceived; it heard from both sides in finding, as a matter of law, that the parties had not entered into an enforceable agreement as to the return of any jewelry.  In any event, as noted above, the Court has already addressed this issue; in dismissing Defendant's Section 2255 motion, the Court held Sections A.6 and B.5 to be unenforceable, but severable from the plea agreement as a whole.  As the Court noted then, Defendant retains whatever rights he may have as to the forfeiture of property.

As to any other basis for authority alleged by Defendant, contrary to Defendant's implications, federal district court do not possess any "inherent supervisory power" to vacate criminal judgments based on fraud by circumventing the Federal Rules of Criminal Procedure.

<u>Washington</u>, 549 F.3d at 912-14 (citing <u>Carlisle v. United States</u>, 517 U.S. 416 (1996)).   For the reasons discussed herein, Defendant cannot collaterally attack the validity of his plea agreement. As such, the motions seeking such relief must be dismissed.

      **B.     Motions Seeking to Challenge Subject Matter Jurisdiction**

      Defendant's motions and supporting material asserting that the Court lacks subject matter jurisdiction over this case fare no better (Doc. Nos. 109, 110, 111, 130, 131, 132, 143).   These documents essentially raise a number of constitutional arguments commonly brought by "tax protesters," challenging the constitutional basis for the Government's authority to enforce tax laws.   Not only has Defendant not identified any legitimate authority for the Court to grant the relief he seeks, the claims raised have been widely rejected as frivolous by federal courts.

      Defendant suggests two bases for raising his claims – Federal Rule of Civil Procedure 60(b) and Federal Rule of Criminal Procedure 12(b)(2).   The Court has already explained why Civil Rule 60 does not apply in this criminal case.[10]   However, Criminal Rule 12(b)(2) does not avail Defendant either.   As the Government points out, Rule 12 applies only to ***pending*** criminal cases.   <u>See</u> <u>Ward v. United States</u>, Civ. No. 17-2301(WHW), 2017 WL 2957940, *2 (D.N.J. July 11, 2017).   The Third Circuit issued the mandate in this matter on July 23, 2012, so Defendant's case had not been pending for a number of years prior to the filing of the present motions.   <u>See</u> <u>United States v. Sturman</u>, 556 Fed. Appx. 67 (3d Cir. 2014); <u>United States v. Rashid</u>, 654 Fed. Appx. 54, 57 (3d Cir. 2016).   Accordingly, neither Rule 60(b) nor Rule 12(b) permit Defendant

---

[10]     Several of Defendant's filings, in fact, contain language indicating that they were meant to be filed in a civil, rather than a criminal case.  (Doc. Nos. 131, 132).

to seek the relief sought here.[11]  Regardless, as with his claims regarding his plea agreement, Defendant's contentions regarding subject matter jurisdiction constitute collateral attacks on his conviction barred by provisions of the plea agreement.  Even if he could raise these issues collaterally, he has not sought, not received, the required certification from the Third Circuit to file a new Section 2255 motion.  As such, the Court has no avenue by which to consider Defendant's claims.

Even were this not the case, Defendant does nothing more than parrot a number of arguments common among "tax protesters;" *i.e.*, persons who deny the United States Government's authority to levy and collect certain taxes, primarily income taxes.  As noted above, these arguments have been unanimously rejected by the courts.  See Hattman v. Comm'r of Internal Revenue, 149 Fed. Appx. 121, 123 (3d Cir. 2005) ("These types of tax protester arguments have been rejected as patently frivolous, and require no additional analysis here."); United States v. Lesonik, No. CA 12-65, 2012 WL 4611950, at *1 (W.D. Pa. Oct. 2, 2012) (collecting cases).  This includes the very arguments raised by Defendant here.  See Balice v. Comm'r of Internal Revenue, 634 Fed. Appx. 349, 350 (3d Cir. 2016) (finding that the type of tax-protester arguments raised, including that the Constitution does not authorize an income tax and that the 16th Amendment lacks an enactment clause, have long been rejected as frivolous).

Accordingly, there is simply no basis for the Court to grant Defendant's request to dismiss this case for lack of subject matter jurisdiction.  To the contrary, the Third Circuit has

---

[11]     Defendant also references Federal Rule of Criminal Procedure 34(a) as a basis for challenging the Court's jurisdiction.  However, Rule 34(b) makes it very clear that any challenges under this rule must be filed within 14 days after a court accepts a verdict or finding of guilty.  Suffice to say, the deadline for filing such a motion has long since passed.

specifically held that 18 U.S.C. § 3231, which provides district courts with original jurisdiction over offenses against the United States, includes jurisdiction over tax offenses.  See United States v. Isenhower, 754 F.2d 489, 490 (3d Cir. 1985); United States v. Farnsworth, 302 Fed. Appx. 110, 112 (3d Cir. 2008).  As such, even if the Court could consider Defendant's jurisdictional arguments, they are completely without merit, and his motions seeking such relief would simply be denied rather than dismissed.[12]

### C.    Motions Seeking Relief on the Basis of Government Misconduct

Finally, Defendant raises several issues of alleged Government misconduct, which he claims require the Court to dismiss this matter, or, at the very least, allow him to withdraw his plea agreement (Doc. Nos. 102, 103, 113, 123, 148).  The Court has already discussed why Defendant cannot now collaterally challenge his plea agreement.  It also finds that Defendant is unable to collaterally raise a claim that prosecutorial misconduct warrants dismissal of his case.

At the risk of redundancy, the Court will again note that these motions, as collateral attacks, are barred by the waiver which both this Court and the Third Circuit have already enforced.  Regardless, his attempts to raise claims of Government misconduct pursuant to Federal Rules of Criminal Procedure 6, 7, and 8, as well as pursuant to the Administrative

---

[12]    Defendant filed several motions purportedly for the Court to take judicial notice of certain Supreme Court decisions, including Brushaber v. Union Pacific R.R. Co., 240 U.S. 1 (1916), and Stanton v. Baltic Mining Co., 240 U.S. 103 (1916), which he appears to believe support his claim that the Court lacks subject matter jurisdiction based on various tax protester theories, and the Seventh Circuit's decision in Thurman v. Gramley, 97 F.3d 185 (7th Cir. 1996). (Doc. Nos. 110, 111, 126).  The Court certainly is aware of these decisions and does not need a motion to be filed to consider them.  However, the Court in no way is required to, nor will it, take "judicial notice" of Defendant's own interpretation of these cases.  See United States v. Lund, Civ. No. 11-6237-AA, 2012 WL 425942, at *2 (D. Ore. Feb. 8, 2012) (citing Rodriguez v. Holder, 619 F.3d 1077, 1079 (9th Cir. 2010)).  It therefore will grant these motions to the extent they seek for the Court to take judicial notice of the existence of these cases and deny them in all other respects.

Procedure Act, 5 U.S.C. §§ 701-06 ("APA"), fail.   The arguments raised by Defendant generally allege grand jury improprieties and Government misconduct in investigating his case, especially in regard to the search warrant executed at the law office of Defendant's former attorney, Thomas Cerasso.  As explained, challenges such as those raised by Defendant are properly brought, not under the Federal Rules of Criminal Procedure, but under Section 2255.  See United States v. Potts, 317 Fed. Appx. 108 (3d Cir. 2009).  Again, for Defendant to raise such claims correctly would require him to obtain permission from the Third Circuit to file a successive 2255 motion, which he has not done.  The Court further notes that the issues surrounding the search of Attorney Cerasso's office, including the issue of attorney-client privilege, were extensively litigated in 2007 before United States Magistrate Judges Francis X. Caiazza and Lisa Pupo Lenihan at Misc. No. 07-46.

Similarly, the APA does not provide an independent basis for jurisdiction to collaterally attack a criminal conviction.  See Ingrati v. United States, No. Civ.A.355-KAJ, 2004 WL 1588288, at *3 (D. Del. July 14, 2004).  See also Bhatia v. United States, Civ. No. 5:16-cv-11-KS-MTP, 2016 WL 6127799, at *3 (S.D. Miss. Sept. 19, 2016) (dismissing an attempt to collaterally attack the validity of a criminal conviction by way of the APA).  Cf. Paucar v. Att'y Gen. of U.S., 545 Fed. Appx. 121, 125 (3d Cir. 2013).  Even were this not the case, Defendant has not established that he has exhausted whatever administrative remedies he may have with the Internal Revenue Service to warrant judicial review.

Accordingly, Defendant can no more raise his claims alleging Government malfeasance than he can his other claims.  Ultimately, he is seeking to raise a collateral attack while avoiding the procedure he must follow to do so.

14

### D.       Miscellaneous Matters

In addition to the documents discussed above, Defendant has also filed motions and other documents seeking to "enforce" those motions.  He has, for instance, sought default judgment (Doc. Nos. 141, 144), summary judgment (apparently in the amount of $22,517,500,000.00) (Doc. No. 133), and a "prompt hearing" (Doc. No. 147), as well as filing a document seeking various civil remedies, including subrogation for court bonds, a "full accounting," appointment of a substitute trustee, a bill in equity, a decree to compel damages, a decree for immediate discharge, and an informal conference (Doc. No. 145).  For essentially the same reasons that his underlying motions fail, his subsequent attempts to enforce these motions do as well.  Rule 55 (Default Judgment) and Rule 56 (Summary Judgment), for example, are Rules of Civil Procedure, with no application in this case.  The Court reiterates that this is a criminal, not a civil matter.

Defendant has also filed an Affidavit to proceed in forma pauperis (Doc. No. 146).  This motion is now moot given that Defendant has paid no fees in the filing of his dozens of motions, and the Court has dismissed or denied all of Defendant's motions on grounds other than the non-payment of filing fees.

The Court is cognizant that Defendant is proceeding *pro se* in this matter, and that he appears to be trying to raise his arguments by any means possible.  As the Court has discussed herein, he simply has no basis for doing so.  This case is remarkably similar to the situation in United States v. Reynolds, 447 Fed. Appx. 298 (3d Cir. 2011), where a criminal defendant tried, and failed, to raise collateral challenges to his conviction and sentence via more than 30 motions, letters, and documents raising such grounds as Rule 60(b), Hazel-Atlas, and claims for default or summary judgment.  The Court emphasizes that, even if a procedural avenue were open to

Defendant, his motions are varying levels of meritless to frivolous, so this is hardly a case where procedural safeguards are stopping legitimate arguments from being raised.    Whatever he wants to call the motion, Defendant needs to get Third Circuit approval to file another collateral challenge and to somehow convince the Third Circuit not to enforce the collateral waiver that has already been enforced several times.

## III.   Conclusion

Accordingly, for the reasons set forth herein, the Court will, by separate order, dismiss or deny each of Defendant's motions seeking to collaterally attack his conviction and/or sentence. To the extent relevant, the Court declines to issue a certificate of appealability, as Defendant has failed to make "a substantial showing of the denial of a constitutional right."  See 28 U.S.C. § 2253(c)(2).  As the Court has explained, it does not reach the merits of any of Defendant's claims, as he waived his right to bring such claims, and, in any event, he has identified no proper authority to bring the claims before this Court.

s/Alan N. Bloch
United States District Judge


Date:  March 24, 2021

ecf:    Counsel of record

cc:    Gregory J. Podlucky, Fed. Reg. No. 30494-068
       RMR Phoenix
       Residential Reentry Office
       230 North First Avenue, Suite 405
       Phoenix, AZ 85003